## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JAMES A. MARSHALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 10-1250-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.    Background

Plaintiff applied for both DIB and SSI on April 27, 2007 alleging disability since November 1, 2006. (R. 13, 167-74). Thereafter, Plaintiff amended his alleged onset date to March 1, 2008. (R. 29-30). The applications were denied initially and upon

reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ).  (R. 13, 63-66, 83-84).  Plaintiff's request was granted, and after some confusion about the time and place of hearing, Plaintiff appeared with counsel for a hearing before ALJ Edmund C. Werre on May 5, 2009.  (R. 13, 102-65).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 13, 25-62).  After Plaintiff testified to depressive symptoms and an inability to afford medication or treatment for his depression (R.46-47), counsel requested a consultative mental evaluation and the ALJ took that request under advisement.  (R. 51, 59-61).

On July 22, 2009, ALJ Werre issued his decision denying counsel's request for a consultative evaluation, and finding that although Plaintiff is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. 19-20).  Therefore, he found that Plaintiff is not disabled within the meaning of the Act, and denied Plaintiff's applications for benefits.  (R. 20-21).  Plaintiff sought Appeals Council review, and submitted a letter argument and additional evidence to the Council.  (R. 8-9, 392-438).  The Council received the additional evidence and made it a part of the administrative record in this case.  (R. 5). The Appeals Council considered Plaintiff's letter argument and the additional evidence but found that it does not provide a basis for changing the ALJ's decision, and denied Plaintiff's request for review.  (R. 1-2).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 6);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision.  (Doc. 1).

2

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  <u>Weinberger v. Salfi</u>, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); <u>Brandtner v. Dep't of Health and Human Servs.</u>, 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.
Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a
physical or mental impairment which prevents him from engaging in any substantial
gainful activity and which is expected to result in death or to last for a continuous period
of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)
(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.
1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.
§§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.
§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity
that he is not only unable to perform his past relevant work, but cannot, considering his
age, education, and work experience, engage in any other substantial gainful work
existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20
C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.
2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a
determination can be made at any of the steps that a claimant is or is not disabled,
evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting
Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether
claimant has engaged in substantial gainful activity since the alleged onset, whether he
has a severe impairment, and whether the severity of his impairment(s) meets or equals

4

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or

equal a listed impairment, the Commissioner assesses claimant's residual functional

capacity (hereinafter RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is

used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--

whether claimant can perform his past relevant work, and whether, when considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In steps one through four the burden is on claimant to prove a disability that prevents

performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show jobs in the economy within Plaintiff's

capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims several errors in the ALJ's decision based upon the ALJ's finding

at step two that Plaintiff's alleged depression is not a medically determinable impairment

in this case, and his alleged failure to consider Plaintiff's mental impairments or to order a

consultative mental evaluation, and the Appeals Council's failure to provide a rationale

why the additional evidence received does not provide a basis for changing the ALJ's

decision regarding the mental impairments.  (Pl. Br. 10-15).  He also claims the ALJ erred

in analyzing the credibility of Plaintiff's allegations of symptoms resulting from his

impairments.  Id. at 15-18.  The Commissioner argues that both the ALJ and the Appeals

Council properly considered Plaintiff's alleged mental impairments, that the ALJ properly

considered the credibility of Plaintiff's allegations, and that substantial evidence supports

the ALJ's decision.  (Comm'r Br. 6-13).  The court begins with consideration of the

errors allegedly flowing from the ALJ's step two determination.

## III.   Step Two

Plaintiff cites his testimony regarding depressive symptoms and a "Medical

Report" which recommended evaluation by a psychologist; and argues that the ALJ

"ignored this evidence" and refused to order a consultative mental evaluation, relied upon

his personal "unsupported and arbitrary 'opinion' that 'depression is not a medically

determinable impairment,'" erroneously analyzed Plaintiff's claim based only upon

physical impairments, and as a consequence erred in finding Plaintiff not disabled.  (Pl.

Br. 10) (citing (R. 46-47, 51, 349)).  He notes that he submitted additional evidence

"further documenting Plaintiff's mental 'anxiety disorder'" to the Appeals Council, but

argues that the Appeals Council did not provide any reasoned analysis explaining why it

upheld the decision, and that these errors require remand for the Commissioner to

reassess disability based upon a combination of mental and physical impairments.  (Pl.

Br. 11).  The essence of Plaintiff's argument is that the ALJ erroneously found at step two

that Plaintiff has no medically determinable mental impairment and did not consider any

mental impairment in the remainder of his evaluation, and that the Appeals Council failed

to adequately explain why the additional evidence would not change the ALJ's decision.

The Commissioner argues that the ALJ properly determined depression is not a medically determinable impairment in this case and had no duty to order a mental consultative evaluation.  (Comm'r Br. 6-8).  He argues "[t]he first and only mention of Plaintiff's depression in the record occurred at the administrative hearing," and there are no "observations, test results, or other objective evidence to support [Plaintiff's] allegations of depression" or support a finding that Plaintiff has a medically determinable mental impairment.  Id. at 7.  The Commissioner argues the ALJ had no duty to order a consultative evaluation because it is Plaintiff's burden to point to some objective evidence suggesting a reasonable possibility that a severe impairment exists, and Plaintiff did not do so in this case.  Id. at 8 (citing Hawkins v. Chater, 113 F.3d 1162, 1166, 1167 (10th Cir. 1997); Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 778 (10th Cir. 1990)). Additionally, the Commissioner argues that the Appeals Council properly considered the new evidence submitted by Plaintiff and found that it did not provide a basis for changing the ALJ's decision.  (Comm'r Br. 11-12).  He argues first, that in the additional evidence submitted, Dr. Brodsky reported no current signs of depression, but only anxiety related to situational problems, id. at 12 (citing (R. 437)), and that "[s]tressful circumstances that would naturally give rise to situational anxiety or depression . . . do not support a finding of disability."  Id. at 12 (citing Whitney v. Barnhart, No. 02-7083, 2003 WL 1473571 (10th Cir. Mar. 24, 2003)).  Second, he argues that Dr. Brodsky did not find that Plaintiff could not work, but rather suggested that Plaintiff seek more training, such as entry level experience with computers and the internet.  Id. (citing (R. 437)).

## A.      The Step Two Findings

The ALJ stated his step two analysis of mental impairments:

The claimant alleged the mental impairment of depression at his disability hearing.  However, depression is not a medically determinable impairment.[1] The claimant admits he has no documented treatment or diagnosis of a mental impairment.  Social Security Ruling 96-4p states that "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment."  Therefore, in the absence of objective documentation, the undersigned finds that the existence of a mental impairment has not been medically determined.

The claimant's attorney representative requested a psychological consultative evaluation for the claimant (Exhibit 14E) [(R. 272)].  The undersigned declines this request.  Although the Administrative Law Judge has the duty to develop the record, it is clearly the responsibility of the claimant to "... provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled."  (20 CFR 404.1512 and 416.912).  As explained above, the claimant presents no medically determinable mental impairment.  Thus, a psychological consultative evaluation is not warranted.

(R. 15-16).

Moreover, in his RFC analysis, the ALJ found Plaintiff has the mental capacity for

unskilled work:

Although the claimant alleges depressive symptoms, the undersigned finds that the claimant's alleged depression is not a medically determinable impairment.  Based on the evidence of record, it is reasonable to conclude that the claimant has the ability to understand, remember and carry out

---

[1]Plaintiff argues that this sentence reveals the ALJ's personal bias that depression is never a medically determinable impairment.  However, the sentence in context reveals the ALJ's finding that Plaintiff has not shown any medical signs and laboratory findings suggesting depression is a medically determinable impairment in this case.

simple instructions consistent with unskilled work.  This level of mental functioning supports sufficient mental ability to perform the basic work activities of unskilled work.

(R. 19) (citing 20 C.F.R. §§ 404.1521, 416.921).

The Appeals Council stated its consideration of the additional evidence that was provided with Plaintiff's request for review:

In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.

We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(R. 1-2).

## B.    Analysis

At step two of the evaluation process, the Commissioner determines whether a claimant has a severe medically determinable physical or mental impairment or a combination of impairments which is severe.  20 C.F.R. §§ 404.1520, 416.920.  Only medical evidence consisting of signs, symptoms, and laboratory findings from a medically acceptable source such as a licensed physician or a licensed or certified psychologist may establish that a claimant has a medically determinable impairment.  Id. at §§ 404.1508, 404.1513(a), 416.908, 416.913(a); see also Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007) ("Only 'acceptable medical sources' can provide evidence to establish the existence of a medically determinable impairment.") (citing 20 C.F.R. § 404.1513(a)).  As the ALJ noted here, the Commissioner has clarified that "[n]o

symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." (R. 16) (quoting Social Security Ruling (SSR) 96-4p (West's Soc. Sec. Reporting Serv., Rulings 119 (Supp. 2010))).   An impairment or a combination of impairments is severe if it would have more than a minimal effect on the claimant's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  Williams, 844 F.2d at 751; see also 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921.

Here, the ALJ determined that Plaintiff's only severe impairment is degenerative disc disease.  (R. 15).  In fact, as quoted above, the ALJ determined that the depression alleged by Plaintiff at the hearing was not even a medically determinable impairment, and he found no objective medical evidence suggesting a medically determinable mental impairment.  (R. 15-16).

The ALJ applied the correct legal standard, and substantial evidence supports his step two findings.  There was no medical evidence before the ALJ from an acceptable medical source based upon signs, symptoms, and laboratory findings which diagnosed Plaintiff with a medically determinable mental impairment.  Plaintiff's appeal to the "Medical Report" of Dr. Prostic does not require a different conclusion.  Dr. Prostic commented on Plaintiff's back and leg pain: "His current symptoms are far out of

10

proportion to objective findings.  Additional orthopedic treatment is unlikely to be

beneficial.  Evaluation by a psychologist should be considered." (R. 349).  Dr. Prostic's

comment does not indicate Plaintiff has depression, and it certainly does not constitute a

diagnosis of depression.  Rather, it suggests that Plaintiff is malingering, but recognizes

that a psychologist's evaluation might potentially reveal the reported symptoms to be

psychologically-based.  It does not provide a proper basis to find that Plaintiff has a

medically determinable mental impairment.

     For the same reason, the ALJ did not err in declining Plaintiff's request for a

consultative mental evaluation.  As the Commissioner notes, the agency "has broad

latitude in ordering consultative examinations."  (Comm'r Br. 8) (quoting Hawkins, 113

F.3d at 1166; and citing Diaz, 898 F.2d at 778).  The court in Hawkins held that:

> Ordinarily, the claimant must in some fashion raise the issue sought to be
> developed, which, on its face, must be substantial.  Specifically, the
> claimant has the burden to make sure there is, in the record, evidence
> sufficient to suggest a reasonable possibility that a severe impairment
> exists.  When the claimant has satisfied his or her burden in that regard, it
> then, and only then, becomes the responsibility of the ALJ to order a
> consultative examination if such an examination is necessary or helpful to
> resolve the issue of impairment.

Hawkins, 113 F.3d at 1167 (citations omitted).  Although Plaintiff raised the issue of

depression, the record before the ALJ did not reveal it to be a substantial issue on its face,

for Plaintiff's hearing testimony was the only evidence in the record of any depressive

symptoms.  In fact, Plaintiff admitted he had specifically denied depression in his earlier

submissions to the agency.  Moreover, the medical evidence before the ALJ is absent any

mention of depression.  Before the ALJ, Plaintiff did not provide evidence suggesting a reasonable possibility of a <u>medically determinable</u> mental impairment, much less did he meet his burden to suggest a reasonable possibility of a <u>severe</u> mental impairment.

However, the record did not close with the record before the ALJ.  Plaintiff provided additional evidence to the Appeals Council, and the Council issued an order making that evidence a part of the administrative record in this case.  (R. 5).  Plaintiff argues that the Appeals Council erred in failing to explain why the new evidence would not change the ALJ's decision.  (Pl. Br. 11, 12, 14).  The Commissioner argues that the Appeals Council properly considered the new, additional evidence.  (Comm'r Br. 11-12). He argues that the Appeals Council is not obligated to articulate specific reasons for denying review, and that the record supports the Council's finding that the new evidence does not provide a basis for changing the ALJ's decision.  <u>Id.</u> at 11 (citing 20 C.F.R. §§ 404.970(b), 416.1570(b); <u>Martinez v. Barnhart</u>, 444 F.3d 1201, 1207-08 (10th Cir. 2006)).

The Commissioner is correct.  The court takes the Appeals Council at its word "when it declares that it has considered a matter."  <u>Hackett</u>, 395 F.3d at 1173.  If, as happened here, the Appeals Council states that it considered the evidence, there is no error, even if the order denying review includes no further discussion.  <u>See</u> <u>Martinez</u>, 444 F.3d at 1207-08 (noting that analysis of the new evidence by the Appeals Council would have been helpful, but was not required).  The court finds no error in the mere failure to explain in detail why the new evidence would not change the ALJ's decision.

When new evidence has been submitted to and accepted by the Appeals Council, that evidence becomes a part of the record for judicial review.  See O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994) (holding that "new evidence becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence"); Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004) (same).  Therefore, it is the court's task to determine whether the qualifying new evidence upsets the ALJ's decision.  Martinez v. Astrue, 389 Fed. Appx. 866, 869 (10th Cir. 2010).

Here, the new evidence regarding Plaintiff's mental impairments consists of a "Psychological Report," a "Psychiatric Review Technique" form, and a "Mental Residual Functional Capacity Assessment" form, all completed by a licensed psychologist, Dr. Howard Brodsky, after an interview of Plaintiff in Dr. Brodsky's office on August 25, 2009, about a month after the ALJ issued his decision in this case.  Dr. Brodsky diagnosed Plaintiff with "Anxiety Disorder due to joblessness and pain following back injury" (R. 420, 438), and, therefore, it might properly be said that Plaintiff has a medically determinable mental impairment--contrary to the ALJ's finding that Plaintiff's depression is not a medically determinable impairment.  However, in the circumstances presented by this case, the court finds, as did the Appeals Council, that the additional information would not change the ALJ's decision.

Primarily, in his report Dr. Brodsky summarized the interview he conducted with Plaintiff.  (R. 434-38).  The report summarizes Plaintiff's account to Dr. Brodsky of his history, medical history, background, family history, parents, siblings, education, daily

13

activities, and responsibilities.  (R. 434-37).  In the last page or so of his report, Dr.

Brodsky presents a diagnostic review and a summary of his findings:

> Although [Plaintiff] complains of depression, it appears his symptoms are
> more related to anxiety.  Although his sleep is impaired including waking
> up during the night, the cause of being woken appears to be pain. . . . His
> anxiety appears to be related to situational problems, primarily [sic]
> finances.
>
> * * *
>
> The client has received recommendations for psychiatric medications
> previously and has only stopped taking them because of finances.  He
> would be advised to return to some anti-anxiety medications.  He also
> should consider some brief mental health intervention for the purpose of
> orienting him to a new life.  Whatever involvements he has in the future he
> must take into consideration the limitations he has physically.  He has not
> been able to get himself further then filling his time with family
> responsibilities [sic].  I would like to see him attempt to gain more training.
> A starting point would be some entry level experience with computers and
> internet.
>
> In summary, James Marshall was seen for psychological consultation in
> regard to a Social Security matter.  The client reported substantial physical
> limitations resulting from his back injury.
>
> I am aware of symptoms which support a diagnosis reflecting anxiety, but I
> do not see current signs supporting a diagnosis of depression.  His
> joblessness has played a role in deteriorating this man's future.  He has
> adopted a pattern of behavior to maintain himself, but this pattern
> undermines his work habits.  Basically he has become too comfortable
> working [sic].  I see him as someone who needs direction which is not
> available in his life.  He would be wise to receive therapy sessions to help
> him direct himself to adapting to his back pains in a more adaptive manner.
> His marked limitations in sustained concentration and persistence may be
> improved by participation in therapy.

(R. 437-38).

In his Psychiatric Review Technique form, Dr. Brodsky diagnosed "Anxiety disorder due to joblessness and pain following back injury" (R. 420), and found that Plaintiff had "moderate" restriction of activities of daily living, "mild" difficulties in maintaining social functioning, and in maintaining concentration, persistence, or pace, and "none" episodes of decompensation.  (R. 426).  In the section of the form identified as "Consultant's Notes," Dr. Brodsky inserted "See report."  (R. 428).  In the "Summary Conclusions" section of his Mental Residual Functional Capacity Assessment form, Dr. Brodsky found Plaintiff is "not significantly limited" in seventeen of twenty mental activities.  (R. 430-31).  He found Plaintiff "moderately limited" in "the ability to respond appropriately to changes in the work setting," and in "the ability to set realistic goals or make plans independently of others."  (R. 431).  He found Plaintiff is "markedly limited" in one mental activity, "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  Id.  Dr. Brodsky's Mental Residual Functional Capacity Assessment form included a "Remarks" section which the doctor left blank, and a "Functional Capacity Assessment" section which instructs the preparer to:

> Record in this section the elaborations on the preceding capacities. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed.  Explain your summary conclusions in narrative form.  Include any information which clarifies limitation or function.  Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

(R. 432).  In this section, Dr. Brodsky inserted, "See report."  Id.

As quoted above, and as the Commissioner asserts, Dr. Brodsky did not see current signs supporting a diagnosis of depression; he found that Plaintiff has anxiety related to situational problems such as finances, physical pain, and joblessness--primarily finances. Moreover, Dr. Brodsky did not opine that these situational problems would have more than a minimal effect on Plaintiff's basic mental work activities.  In fact, he stated that Plaintiff should attempt to get more training, suggesting entry level experience with computers and the internet.  Further, in contrast to the possibility suggested by Dr. Prostic's report, Dr. Brodsky did not find, or even suggest, that Plaintiff's pain symptoms might be psychologically-based.  Rather, Dr. Brodsky related Plaintiff's pain to his physical injuries, noted that Plaintiff's alleged problems sleeping related to his pain, not to psychological issues, and suggested that any treatment should focus on adapting to his pain in a more adaptive manner.  (R. 435, 437-38).

Moreover, Dr. Brodsky's opinions are not supported by rationale, explanation, or clinical or laboratory testing.  For example, in a single sentence at the end of his report, Dr. Brodsky mentioned Plaintiff's "marked limitations in sustained concentration and persistence" which "may be improved by participation in therapy."  (R. 437).  However, there is simply no discussion in the report of these allegedly marked limitations, and in his Psychiatric Technique Review form, Dr. Brodsky reveals the opinion that Plaintiff has only "mild" difficulties in maintaining concentration, persistence, or pace.  (R. 426). Further, although Dr. Brodsky stated that one should see his report for explanation

16

regarding his Psychiatric Review Technique form, he says nothing regarding the form in his report, and the report does not explain the basis for his findings regarding the "marked" and "mild" limitations opined regarding the four basic mental functional areas discussed in the form.

   With regard to Dr. Brodsky's "Functional Capacity Assessment" in his Mental Residual Functional Capacity Assessment form, he again stated that one should see his report for the elaborations regarding the "marked" and "moderate" limitations he found in three of the twenty mental activities.  (R. 432).  However, other than the single sentence discussed above concerning "marked limitations in sustained concentration and persistence," Dr. Brodsky provides no discussion regarding any mental limitations including the limitations suggested in the form.  In other words, Dr. Brodsky's findings, limitations, and conclusions regarding the severity of Plaintiff's functional limitations, or regarding the specific limitations found, are merely conclusory findings without any specific basis or narrative explication beyond Dr. Brodsky's summary report.  Moreover, Dr. Brodsky's report concluded that Plaintiff's anxiety is related merely to situational problems, and suggested that Plaintiff's mental impairments would not prevent him from working in "entry level experience."  Finally, the court notes that the ALJ also considered Plaintiff's mental functioning and allegation of depressive symptoms during his RFC analysis, and concluded that "the claimant has the ability to understand, remember and carry out simple instructions consistent with unskilled work."  (R. 19).  This finding is consistent with Dr. Brodsky's opinion that Plaintiff is "not significantly limited" in the

17

specific mental activities related to understanding, remembering, and carrying out simple instructions.  (R. 430).  The court finds no error in the Appeals Council's determination that the new evidence submitted by Plaintiff does not provide a basis for changing the ALJ's decision.

Because Plaintiff has shown no error in the Commissioner's step two analyses regarding Plaintiff's mental impairments, his secondary arguments (1) that the RFC assessed was erroneous because it did not include mental limitations, and (2) that the ALJ's application of the Medical-Vocational Guidelines was erroneous because it did not include consideration of nonexertional mental impairments; must both necessarily fail because they are based upon an incorrect premise.

## IV.    Credibility

Plaintiff's final arguments are based upon his claim that the ALJ erred in analyzing the credibility of Plaintiff's allegations of symptoms.  In that regard, he claims first, that the ALJ failed to comment regarding:  the intensity and persistence of symptoms; medication for treating symptoms; daily activities; location, duration, frequency, and intensity of pain; measures taken to relieve pain and other symptoms; and documented observations of third parties, including both medical and non-medical sources; and argues that these factors are required to be considered and commented upon.  (Pl. Br. 15-17). Plaintiff's second credibility argument is that the ALJ failed to link his credibility finding to substantial evidence and explain the factors upon which his credibility determination was based.  Id. at 17-18.  The Commissioner responds that a factor-by-factor analysis is

18

not required, that the ALJ properly articulated the evidentiary bases for his credibility

evaluation, and that substantial evidence in the record supports his credibility

determination. (Comm'r Br. 9-11).

### A.     The ALJ's Credibility Analysis

In his RFC analysis, the ALJ stated he had considered Plaintiff's symptoms in

accordance with the regulations for evaluating symptoms and with the Social Security

Administration's rulings.  (R. 16-17) (citing 20 C.F.R. §§ 404.1529, 416.929 (How we

evaluate symptoms, including pain); SSR 96-4p (Symptoms, Medically Determinable

Physical and Mental Impairments, and Exertional and Nonexertional Limitations); SSR

96-7p (Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an

Individual's Statements)).  He summarized the two-step regulatory standard for

evaluating the credibility of Plaintiff's allegations, and stated his conclusion regarding

credibility--that Plaintiff's "statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent with the

above residual functional capacity assessment."  (R. 17).  He summarized Plaintiff's

testimony and the medical evidence, and then set out his analysis regarding the credibility

of Plaintiff's allegations:

> It appears from the evidence that the claimant is able to perform a range of
> light work but his condition is aggravated with work that is heavier than
> light duty.  Progress notes show that the claimant was returned to work at
> full duty rather than light duty and his pain was worse.  (Exhibit 4F/2) [(R.
> 300)].

The claimant's allegations of disabling pain are not fully credible. At least one doctor found that the claimant engaged in symptom magnification. (Exhibit 8F) [(R. 348-49)]. Even though Dr. Munhall found the claimant to be credible, it was because he determined the claimant had aggravated his back doing work at an exertional level above light duty. (Exhibit 10F) [(R. 358-62)]. Further, he gave temporary restrictions that are generally accommodated by this residual functional capacity. Updated progress notes show that the claimant reported back pain with some pain/stiffness, insomnia and fatigue but his physical examinations were otherwise negative since his alleged onset of disability. (Exhibit 13F/3-10) [(R. 379-86)]. Physical examination showed tenderness, crepitation and reduced range of motion, stability and strength in December 2007 but this was resolved by his office visit the next month. (Exhibit13F/9-12) [(R. 385-88)]. In addition, this was prior to the claimant's alleged onset of disability. Furthermore, the claimant testified that he was fired from his job as a home health attendant. This indicates that the claimant did not leave due to back pain. Furthermore, the claimant testified that he applied for and received 2 months of unemployment benefits. Receipt of unemployment benefits presupposes an ability to perform full time work and is inconsistent with an allegation of disability.

(R. 18).

**B.**     **Analysis**

The court's consideration of the regulatory legal standard articulated by the ALJ reveals that it is equivalent to the standard articulated by the Tenth Circuit in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987); see also Thompson, 987 F.2d at 1488 (relating the three-step Luna framework: (1) whether plaintiff has shown an impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the impairment and the subjective allegations of symptoms; and (3) if so, whether, considering all the evidence, both objective and subjective, the symptoms are in fact disabling). Although the ALJ stated the standard in two steps ((1) if plaintiff has an impairment that could

reasonably be expected to produce plaintiff's symptoms, (2) the ALJ must consider the entire case record to determine the credibility of plaintiff's allegations), that standard equates to the Luna framework because step one in the regulatory framework articulated by the ALJ subsumes steps one and two of the Luna framework, and step two of the regulatory framework equates to step three of the Luna framework.

Plaintiff's claim that certain factors are required to be considered and some minimal commentary thereon articulated in the ALJ's credibility determination misunderstands both the relevant law and the ALJ's decision.  As Plaintiff's argument suggests, the Commissioner has provided certain regulatory factors, and the courts have articulated factors relevant to a credibility determination.  See 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii) (Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms); and Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489) ("the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence").

21

As these listings demonstrate, the court-articulated factors overlap and expand upon the regulatory factors.  However, as the court in Luna noted, "Of course no such list can be exhaustive."  Luna 834 F.2d at 166.  Moreover, as the Commissioner points out, the courts do not require a formalistic factor-by-factor credibility determination.  (Comm'r Br. 9) (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)).  In Qualls, the court went on to explain that "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied."  Qualls, 206 F.3d at 1372.

Second, Plaintiff's argument that the ALJ provided no reasoned credibility analysis ignores the ALJ's analysis as quoted above, and suggests that the ALJ should have accepted Plaintiff's view of the evidence--that the pain and limiting effects of plaintiff's back impairment progressed and worsened between 2007 and 2009, and that Plaintiff had even contemplated another spinal fusion surgery.  Other than Plaintiff's allegations and his reports to medical personnel, the evidence cited on pages 16 and 17 of Plaintiff's brief does not require a finding that Plaintiff's symptoms have worsened to the point that he is disabled.  Rather, the specific limitations cited by Plaintiff are consistent with the RFC assessed by the ALJ.  Moreover, once Plaintiff's allegations are discounted in light of the ALJ's credibility determination, that evidence will fit comfortably into the ALJ's RFC assessment.  As quoted above, the ALJ stated his credibility analysis, and linked that analysis to record evidence.

22

The court now looks at the specific credibility factors relied upon by the ALJ. Plaintiff does not deny that he sought and received unemployment benefits during a time when he also alleged he was disabled and unable to work.  Rather, he argues that it was only for a short period when compared to the entire time for which he is seeking disability.  (Pl. Br. 18).  Plaintiff forgets the significance of this fact on a determination regarding the credibility of his allegations.  The significance is that Plaintiff was alleging to the Social Security Administration that he was disabled and unable to work in order to attain disability benefits while at the same time he was alleging to the labor department that he was able to work in order to receive unemployment benefits.  Regardless of the length of time Plaintiff made these contradictory assertions, they constitute evidence that his allegations regarding disability are not credible, and that he may also make other incredible allegations regarding his symptoms in order to receive benefits.

As Plaintiff suggests, Dr. Munhall found that Plaintiff's allegations of pain were credible.  However, the ALJ also noted this fact, and explained that the restrictions Dr. Munhall imposed were consistent with the RFC assessed in the ALJ's decision. Moreover, the ALJ noted that the pain Plaintiff complained about to Dr. Munhall was caused by working above the light exertional level, and therefore above the level of RFC assessed by the ALJ.  Plaintiff does not deny that he engaged in symptom magnification as suggested by Dr. Prostic and noted by the ALJ.  This is one more proper basis relied upon by the ALJ to find Plaintiff not credible.  Finally, Plaintiff does not even address the

ALJ's finding that Plaintiff was fired from his job as a home health attendant and did not leave because his symptoms precluded the work.

The ALJ applied the correct legal standard to his credibility determination, and articulated reasons for finding Plaintiff's allegations not credible which are affirmatively linked to record evidence.  More is not required.  Plaintiff's credibility argument seeks to have the court reweigh the evidence and impose its view upon the ALJ.  The court may not do so.  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  <u>Bowman</u>, 511 F.3d at 1272 (quoting <u>Casias</u>, 933 F.2d at); <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.  The court has reviewed the record and finds that substantial evidence supports the ALJ's credibility finding.  The court finds no error in the decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioners decision.

Dated this <u>8th</u> day of August 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

24